# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

PHENG KHOV,

        Appellant,

        v.

DEPARTMENT OF HEALTH AND
   HUMAN SERVICES,

        Agency.

DOCKET NUMBER
DC-0432-18-0300-I-1

DATE:  November 30, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Joanna Friedman</u>, Esquire, and <u>Sarah L. McKinin</u>, Esquire, Washington,
   D.C., for the appellant.

<u>Stephanie Hosea</u> and <u>Jennifer Smith</u>, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his performance-based removal under 5 U.S.C. chapter 43.  For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, and REMAND the case to the regional office for

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

further adjudication in accordance with this Remand Order.  The appellant's removal is NOT SUSTAINED.

## BACKGROUND

¶2      On January 8, 2017, the agency appointed the appellant by reinstatement to the position of GS-0343-14 Supervisory Program and Management Analyst in its Bureau of Health Workforce (BHW), Division of Business Operations.[2]  Initial Appeal File (IAF), Tab 13 at 11.  The appellant's job duties involved managing BHW's information technology (IT) systems to ensure their efficiency, effectiveness, and legal compliance, as well as managing a team of subordinates and ensuring the efficiency and effectiveness of BHW's IT workforce.  IAF, Tab 13 at 14-15.  As a Supervisory Program and Management Analyst, the appellant had five critical performance elements:  (1) Teamwork, (2) Customer Service, (3) Leadership, (4) BHW IT Portfolio Oversight, and (5) Special Projects.  IAF, Tab 11 at 7-12.  His performance was evaluated under a five-tier rating system, from lowest to highest:  (1) Achieved Unsatisfactory Results, (2) Partially Achieved Expected Results, (3) Achieved Expected Results, (4) Achieved More than Expected Results, and (5) Achieved Outstanding Results. *Id*. at 5.

¶3      On July 14, 2017, the appellant's first-level supervisor, the Director of Division Operations, notified him that he was currently performing at an unacceptable level in the critical element of BHW IT Portfolio Oversight and placed him on a 60-day performance improvement plan (PIP).  *Id*. at 23-29.  On September 18, 2017, the appellant's supervisor notified him that he had failed to demonstrate acceptable performance during the PIP, and on November 1, 2017, he proposed the appellant's performance-based removal under the procedures of 5 U.S.C. chapter 43.  IAF, Tab 10 at 14-24, Tab 11 at 30-31.  After the appellant responded, on December 29, 2017, the appellant's supervisor issued a decision

_____

[2] It appears that the appellant had career tenure upon reinstatement.  IAF, Tab 13 at 11; *see* 5 C.F.R. §§ 315.201(c)(4), 315.402(b)

removing him effective January 8, 2018.  IAF, Tab 9 at 25-74, Tab 10 at 4-11, 15-22.

¶4    The appellant filed a Board appeal, challenging the merits of his removal and raising affirmative defenses of harmful procedural error and whistleblower reprisal.  IAF, Tab 1 at 7, 12, Tab 24 at 1-2.  After a hearing, the administrative judge issued an initial decision affirming the appellant's removal.  IAF, Tab 33, Initial Decision (ID).  He found that the agency proved its case by substantial evidence, ID at 2-38, and that the appellant failed to prove his affirmative defenses of whistleblower reprisal, ID at 39-53, or harmful procedural error, ID at 53-57.

¶5    The appellant has filed a petition for review, arguing that his performance standards were invalid and disputing the administrative judge's analysis, findings, and credibility determinations with respect to his affirmative defenses.  Petition for Review (PFR) File, Tab 5.  The agency has filed a response to the petition for review, and the appellant has filed a motion to strike the agency's response as untimely.  PFR File, Tabs 11, 12.

## ANALYSIS

<u>The appellant's motion to strike the agency's response to the petition for review is granted.</u>

¶6    The agency's response to the petition for review was originally due on January 4, 2018.  PFR File, Tab 1, Tab 6 at 1; *see* 5 C.F.R. § 1201.114(e).  The agency requested an extension of time to file its response, which the Office of the Clerk of the Board granted, setting a new deadline of January 25, 2019.  PFR File, Tabs 7, 8.  However, at midnight on December 22, 2018, the Board ceased all operations due to a partial government shutdown.  PFR File, Tab 10 at 1 n.*.  The Board promptly issued a press release, notifying the public that all filing and processing dates would be extended by the number of calendar days that the Board was shut down.  Press Release, U.S. Merit Systems Protection Board,

Status of the U.S. Merit Systems Protection Board During a Partial Government Shutdown (Dec. 21, 2018), *available at* https://www.mspb.gov/ (last visited November 29, 2023). On January 26, 2019, the Board resumed operations after being shut down for 35 days. PFR File, Tab 10 at 1 n.*. Thus, the agency's January 25, 2019 filing deadline was extended 35 days to March 1, 2019.

¶7        On March 4, 2019, the agency requested an extension of time to file its response to the petition for review, which the Office of the Clerk of the Board denied under 5 C.F.R. §1201.114(f) as having been filed past the date that the response was due. PFR File, Tabs 9, 10. On March 6, 2019, the agency filed its response to the petition for review, requesting that the Board find good cause for the untimely filing on the basis that its representative miscalculated the revised filing deadline. PFR File, Tab 11. However, it is well established that a party's error in calculating the filing deadline generally does not constitute good cause to excuse an untimely filing. *See Lapedis v. Department of Health and Human Services*, 47 M.S.P.R. 337, 340, *aff'd*, 949 F.2d 403, (1991) (Table); *Gaff v. Department of Transportation*, 45 M.S.P.R. 387, 390 n.2 (1990); *cf. Walls v. Merit Systems Protection Board*, 29 F.3d 1578, 1583-84 (Fed. Cir. 1994) (finding good cause for a 2-day filing delay when instructions on how to calculate the deadline were ambiguous). In the interests of fairness and adjudicatory efficiency, the Board will not waive its timeliness requirements in the absence of good cause, no matter how minimal the delay. *Fitzgerald v. Department of Veterans Affairs*, 45 M.S.P.R. 222, 223 (1990). The appellant's motion to strike is granted. PFR File, Tab 12; *see Bissett v. U.S. Postal Service*, 66 M.S.P.R. 631, 635 n.1 (1995).

The agency failed to prove by substantial evidence that its performance standards are valid.

¶8        At the time the initial decision was issued, the Board's case law stated that, to prevail in an appeal of a performance-based action under 5 U.S.C. chapter 43, an agency must establish by substantial evidence that: (1) the Office of Personnel

Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element.[3]  *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013).  During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021), that, in addition to the five elements of the agency's case set forth in the initial decision, the agency must also justify the institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP.  The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place.  *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16.

¶9          In this case, the administrative judge found that the agency carried its burden on each element.  ID at 3-38.  On petition for review, the appellant argues that the agency failed to prove the third element of its case because the performance standard at issue was written in negative terms.  In other words, it was an impermissible "backwards" standard.  PFR File, Tab 1 at 5, 14-20.

¶10          In order to be valid under 5 U.S.C. § 4302(c)(1), a performance standard must state in positive terms what an employee must do in order to achieve acceptable performance; it cannot be written in terms of what an employee must not do.  *Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 18 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012).  Standards of the latter type are known

---

[3] Under the agency's five-tier performance system, the agency was required to show that the appellant's performance was at the Unsatisfactory level rather than the Partially Achieved level.  *See Van Prichard v. v. Department of Defense*, 117 M.S.P.R. 88, ¶ 24 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012).

as "backwards" standards and are invalid because they do not clearly apprise an employee of what he must do to perform successfully in his position. *Eibel v. Department of the Navy*, 857 F.2d 1439, 1441-44 (1988); *Ortiz v. Department of Justice*, 46 M.S.P.R. 692, 695-96 (1991). They identify unacceptable performance rather than acceptable performance. *Henderson v. National Aeronautics and Space Administration*, 116 M.S.P.R. 96, ¶12 n.3 (2011).

¶11    The performance standard at issue in this appeal reads in relevant part as follows:

> Level 2: Partially Achieved Expected Results (PA)
>
> Marginally acceptable; needs improvement; inconsistently meets Leve/3 (AE) performance requirements. The employee has difficulties in meeting expectations. Actions taken by the employee are sometimes inappropriate or marginally effective. Organizational goals and objectives are met only as a result of close supervision. This is the minimum level of acceptable performance for retention on the job. Improvement is necessary. Examples include:
>
> • Sometimes meets assigned deadlines;
>
> • Work assignments occasionally require major revisions or often require minor revisions;
>
> • Inconsistently applies technical knowledge to work assignments;
>
> • Employee shows a lack of adherence to required procedures, instructions, and/or formats on work assignments;
>
> • Occasionally employee is reluctant to adapt to changes in priorities, procedures or program direction which may contribute to the negative impact on program performance, productivity, morale, organizational effectiveness and/or customer satisfaction. Needs improvement.

IAF, Tab 11 at 15-16. The administrative judge considered the appellant's argument that this standard was invalid for being backward, but he found that when read in conjunction with the performance element at issue and the standards for performance at other levels, the appellant was on adequate notice of what was being required of him. ID at 8-9.

¶12     We agree with the appellant that the performance standard for Partially Achieved is backwards as written. We find it materially indistinguishable from the standards at issue in *Eibel*, 857 F.2d at 1440, *Oritz*, 46 M.S.P.R. at 695, *Jackson-Francis v. Office of Government Ethics*, 103 M.S.P.R. 183, ¶ 9 (2006), and the various other cases in which the Board and the Federal Circuit have held performance standards invalid as backwards. It describes unacceptable rather than acceptable performance, and if read literally, the appellant would meet this standard by rendering unacceptable performance. *See Burnett v. Department of Health and Human Services*, 51 M.S.P.R. 615, 617 (1991). For instance, assuming that the performance deficiencies identified in the notice of proposed removal are accurate, the appellant met the stated requirement that his work will occasionally require major revisions. IAF, Tab 10 at 17-18, 20. In addition, the appellant was alleged to have failed to follow his supervisor's instructions in completing work assignments, consistent with the terms of the standard. *Id.* at 20-22. It also appears that the appellant met at least one deadline set by his supervisor, thereby satisfying the only positive, albeit vague, requirement to "sometimes" meet assigned deadlines. IAF, Tab 10 at 20; *see Wilson v. Department of Health and Human Services*, 770 F.2d 1048, 1053 (Fed. Cir. 1985) (finding that the terms "sometimes" and "occasionally" as used in the appellant's performance standards were vague).

¶13     We have considered whether this backwards standard can be saved by reference to other documents as the administrative judge found. ID at 8-9. It is true that an agency is not prohibited from using more than one document to set forth the standards against which an employee's performance will be rated, and that certain defects in the standards may be cured by providing additional guidance to be read in conjunction with them. *Diprizio v. Department of Transportation*, 88 M.S.P.R. 73, ¶¶ 11-12 (2001). However, the Board and the Federal Circuit have both found that, in contrast to vague and subjective performance standards, which can be fleshed out and clarified during counseling,

backwards performance standards are beyond salvage because they would need to be completely rewritten in order to describe acceptable performance at all. *Eibel*, 857 F.2d at 1443; *Jackson-Francis*, 103 M.S.P.R. 183, ¶ 10; *Dancy v. Department of the Navy*, 55 M.S.P.R. 331, 335 (1992); *Burnett*, 51 M.S.P.R. at 617-18. Although we agree with the administrative judge that the performance standards must be read in conjunction with the performance elements, the performance elements appear to describe perfect performance, which is presumably not required even at the "Outstanding" level and is all the more unhelpful to determine the performance required at the "Partially Achieved" level. ID at 8-9, IAF, Tab 11 at 11-12, 15-16.

¶14    For these reasons, we find that the agency has failed to prove that its performance standards are valid, and we therefore reverse the appellant's removal. *See Stone v. Department of Health and Human Services*, 35 M.S.P.R. 603, 607 (1987). Because we are reversing the agency's action on the merits, we do not address the appellant's arguments concerning harmful procedural error.[4] PFR File, Tab 1 at 6, 20-23; *see Van Prichard*, 117 M.S.P.R. 88, ¶¶ 7, 25.

The appellant's whistleblower claim is remanded for further adjudication.

¶15    To prove an affirmative defense of whistleblower reprisal, an appellant must show by preponderant evidence that he engaged in protected activity under 5 U.S.C. § 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D), and that the protected activity was a contributing factor in the personnel action under appeal. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-13 (2015). If the appellant makes both of these showings, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity. *Id*., ¶ 14.

¶16    In his prehearing submission, the appellant identified nine alleged protected activities between February 2017 and October 2017 that formed the basis of his

---

[4] The appellant does not argue that his harmful error defense has any relation to his whistleblower claim.

whistleblower defense. IAF, Tab 16 at 11-18. In his initial decision, the administrative judge found that the appellant failed to prove that he engaged in protected activity that was a contributing factor in his removal. ID at 39-53. He addressed only two of the alleged activities specifically—a February 17, 2017 disclosure to the appellant's first-level supervisor that the supervisor was committing misconduct in his dealings with a contractor, and a May 3, 2017 complaint to the agency's Inspector General (IG) in which the appellant reported that his supervisor was retaliating against him for whistleblowing. ID at 51-53; IAF, Tab 16 at 11-14. Regarding the appellant's February 17, 2017 disclosure, the administrative judge found that it lacked sufficient credibility to cause the appellant's supervisor any concern, and that the appellant's performance deficiencies "overshadow[ed] anything that might technically qualify as a disclosure." ID at 52-53. Regarding the May 3, 2017 IG complaint, although the appellant informed his supervisor of the complaint the same day, the administrative judge found that the appellant's supervisor did not understand during the relevant timeframe what the appellant's reference to the IG complaint was about, the appellant's vague statements to his supervisor lacked any information that might generate retaliatory animus, and in any event, the supervisor's concerns about the appellant's performance began in March—well before the appellant's claimed protected activity in May. ID at 52. The administrative judge found that the remainder of the alleged protected activity was of no significance. *Id*. On petition for review, the appellant disputes the administrative judge's findings with respect to three of his claimed protected activities—the May 3, 2017 IG complaint, the February 17, 2017 disclosure to the appellant's supervisor, and a February 15, 2017 disclosure in which the appellant related to several individuals at a meeting similar concerns to those he raised in his February 17 disclosure.[5] PFR File, Tab 5 at 28-34; IAF, Tab 16 at 11-14.

---

[5] Because the appellant does not argue that the administrative judge erred in assessing the remainder of his claimed protected activities, we do not address them. *See* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed

¶17 Regarding his February 2017 disclosures, the appellant testified that, during a February 15, 2017 meeting with several of his team members, the discussion turned to the agency's relationship with a particular contractor, Sapient. IAF, Tab 16 at 11-12; Hearing Transcript, July 24, 2018 (HT2) at 459 (testimony of the appellant). The appellant learned at the meeting that his first-level supervisor was a former Sapient employee overseeing the Sapient contract, and he expressed his belief that this was "a violation of [Federal Acquisition Regulation (FAR)] 5000 series." HT2 at 460 (testimony of the appellant). The appellant also stated that he learned that Sapient had direct access to his supervisor without any agency Contracting Officer's Representative being present, and that this gave the appearance of favoritism and a conflict of interest and was a violation of the FAR 5000 series as well. *Id*. at 462-63 (testimony of the appellant). He also questioned why Sapient was the only contractor present in the Division of Business Operations. *Id*. at 459-60. According to the appellant, on February 17, 2017, he verbally expressed these same concerns directly to his supervisor. IAF, Tab 16 at 12; HT2 at 464 (testimony of the appellant).

¶18 As an initial matter, it appears to us that the appellant's reference to the "FAR 5000 series" pertains to the series of Department of Defense Instructions governing acquisitions in the Department of Defense and its components. *See, e.g.*, Department of Defense Instruction No. 5000.02, Operation of the Defense Acquisition System (Aug. 31, 2018), available at https://www.esd.whs.mil/Directives/issuances/dodi/ (last accessed November 29, 2023). Not only has the appellant failed to identify the particular provision of this complicated and voluminous set of issuances that he believes was violated, but he has also failed to explain why he believes that Department of Defense issuances apply to the Department of Health and Human Services, which is a separate cabinet level department. Nevertheless, a disclosure may be considered protected even in the absence of identification of a specific law or regulation when the employee's

petition or cross petition for review.").

statements and the circumstances surrounding those statements clearly implicate an identifiable violation. *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001). This appears to have been the case here because the agency's Division of Policy and Data Analysis (DPDA) investigated similar allegations made by two unidentified "BHW whistleblowers" and found that they had some merit, albeit with respect to laws and regulations other than the Department of Defense instructions that the appellant identified.[6] IAF, Tab 17 at 17-26. In a December 12, 2017 investigative report, DPDA found that Sapient was working directly with the Division of Business Operations leadership (including the appellant's first-level supervisor), which was improperly cutting the Contracting Officer's Representatives out of the process. *Id*. at 18-19. DPDA also found that the appellant's supervisor should have recused himself from overseeing the Sapient contract because there was an appearance of a conflict of interest with his former employer. *Id*. at 19-20. DPDA further found that Division of Business Operations leadership violated various contracting laws and regulations by circumventing the acquisition process and awarding work directly to Sapient outside the scope of the existing contract. *Id*. at 21-25. Without finding whether any abuse of authority or violation of law, rule, or regulation actually occurred, we find, based on this investigative report, that the appellant proved by preponderant evidence that he had a reasonable belief that they did. *See Kinan v. Department of Defense*, 87 M.S.P.R. 561, ¶ 14 (2001) (finding the appellant's belief reasonable largely because it was corroborated by agency investigations); *see also Murphy v. Department of the Treasury*, 86 M.S.P.R. 131, ¶ 6 (2000) (defining an "abuse of authority" as an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or to other preferred persons).

---

[6] The record does not appear to be conclusive about whether one of these "whistleblowers" was the appellant.

¶19 Nevertheless, we are unable to determine on the existing record whether the appellant's February 2017 disclosures actually occurred, much less whether they were a contributing factor in his removal, because there is conflicting evidence on the issue. As set forth above, the appellant testified that, on February 15 and 17, 2017, he made the disclosures as described. *Supra* ¶ 16. His testimony, at least with regard to the February 15, 2017 disclosure, is corroborated by the testimony of an individual who was supposedly in attendance at that meeting. IAF, Tab 16 at 11; HT2 at 601-03 (testimony of Senior IT Specialist). However, the appellant's supervisor denied that the appellant ever raised concerns to him about a conflict of interest prior to May 3, 2017. HT1 at 67-68 (testimony of the appellant's supervisor). Furthermore, one of the individuals who was supposedly at the February 15, 2017 meeting denied that the appellant ever expressed any concerns about his supervisor's conflict of interest with Sapient. IAF, Tab 16 at 11; HT1 at 295 (testimony of IT Specialist). The administrative judge did not make any definitive findings on whether the appellant actually made these two disclosures or whether his supervisor was aware of them.[7] ID at 52. Because the resolution of this issue involves the weighing of conflicting testimony and the assessment of witness credibility, we find it appropriate to remand this appeal to the administrative judge to address the issue in the first instance. *See Adair v. U.S. Postal Service,* 66 M.S.P.R. 159, 166 (1995).

¶20 Regarding the appellant's claimed May 3, 2017 IG complaint, we find that this would constitute protected activity under 5 U.S.C. § 2302(b)(9)(C).

---

[7] It is not clear whether the administrative judge found that the appellant's claimed February 17, 2017 disclosure was not protected, or was not a contributing factor in his removal, or both. ID at 52-53. However, as explained above, the February 2017 disclosures would have been protected if the appellant made them as described. *Supra* ¶ 17. Furthermore, if his supervisor were aware of them, nexus would be established through the knowledge/timing test of 5 U.S.C. § 1221(e)(1) because the claimed disclosures occurred within 1 year of the appellant's removal. *See Inman v. Department of Veterans Affairs,* 112 M.S.P.R. 280, ¶ 12 (2009). Under the facts of this appeal, the factors that the administrative judge considered in assessing the appellant's case in chief are more properly directed to the agency's affirmative defense. ID at 52-53; *see generally Carr v. Social Security Administration,* 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Furthermore, we disagree with the administrative judge that the appellant's supervisor was unaware of this alleged activity because the record contains unrefuted documentary evidence that the appellant informed his supervisor of this activity by email the same day. ID at 52; IAF, Tab 9 at 55-56. In fact, the appellant's supervisor testified that he read this email. HT1 at 55, 197 (testimony of the appellant's first-level supervisor). The fact that he might not have fully understood the nature of the appellant's complaint or received subsequent contact from the IG does not mean that he was unaware of the appellant's claim that he had filed an IG complaint. ID at 52; HT1 at 66-67 (testimony of the appellant's first-level supervisor); *see Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 25 (2015) (requiring the appellant to show only that the fact of, not necessarily the content of, the protected activity was one of the factors that tended to affect the personnel action in any way). In the context of this appeal, these considerations go more properly to the agency's affirmative defense than to the appellant's case in chief. *See generally Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). However, as with the appellant's February 2017 disclosures, there appears to be a dispute about whether the appellant actually filed an IG complaint as he claims. HT2 at 689 (agency's closing statement). The administrative judge did not make any definitive finding on the matter, and as the agency pointed out, there is no documentary evidence, apart from the appellant's email, that such a complaint was actually filed. ID at 51; HT2 at 689 (agency's closing statement). Again, we find that the administrative judge is in the best position to determine the credibility of the appellant's testimony on the matter. HT2 at 488 (testimony of the appellant). If the administrative judge finds that the appellant filed a complaint with the IG as alleged, the knowledge/timing test is satisfied with respect to the appellant's removal 9 months later. *See Powers v. Department of the Navy*, 97 M.S.P.R. 554, ¶ 18 (2004). If the administrative judge finds that the appellant did not file an IG complaint as alleged, he should nevertheless consider whether the appellant's

supervisor perceived him as a whistleblower by virtue of the May 3, 2017 email. *See generally King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 8 (2011).

¶21        According to the guidance set forth above, the administrative judge shall on remand adjudicate the appellant's whistleblower claim with respect to the three claimed protected activities discussed above.  IAF, Tab 16 at 11-14.  If the administrative judge finds that the appellant engaged in protected activity that was a contributing factor in his removal, as established by the knowledge/timing test or otherwise, or that the appellant was a perceived whistleblower, he shall proceed to the issue of whether the agency has shown by clear and convincing evidence that it would have removed the appellant even in the absence of his protected activity.  The administrative judge's analysis in this regard shall be in accordance with the standard set forth in *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012).

¶22        Finally, in light of the Federal Circuit's decision in *Santos*, the administrative judge shall consider on remand whether the appellant's pre-PIP performance affects the analysis of the appellant's whistleblower affirmative defense.  The administrative judge should provide the parties with the opportunity to submit evidence and argument on this issue and should address any such argument and evidence in the remand initial decision.  *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

**ORDER**

¶23        For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

¶24        Notwithstanding the remand proceedings on the appellant's whistleblowing affirmative defenses, we ORDER the agency to cancel the appellant's removal and restore him retroactive to January 8, 2018.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶25        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶26        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶27        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶28        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

Jennifer Everling

FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.



# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2. The following information must be included on AD-343 for Restoration:
    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.